

# NUMBER 13-17-00053-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN THE INTEREST OF L.D.C., A CHILD

### On appeal from the County Court at Law No. 7
### of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Justices Contreras, Benavides, and Longoria
### Memorandum Opinion by Justice Benavides

Appellant J.C.C.[1] appeals the trial court's judgment for child support arrearages

and sanctions on six grounds that we construe as four.   J.C.C. argues that: 1) the

judgment failed to comply with portions of the federal regulations governing child support;

2) the judgment is void because the Title IV-D court had exclusive jurisdiction over child

---

[1] To protect the identity of the minor child who is the subject of this appeal, we refer to the parties by their initials.   *See* TEX. FAM. CODE ANN. § 109.002(d) (West, Westlaw 2017 through 1st C.S.); TEX. R. APP. P. 9.8.

support cases brought by the attorney general; 3) his procedural due process rights were violated when the case was transferred from the Title IV-D court to the trial court; and 4) the trial court abused its discretion by denying J.C.C. legal representation after he invoked his right to counsel.    We affirm.

## I.    BACKGROUND

J.C.C. and his former wife L.S. were divorced in 2004.    A final divorce decree was rendered by Hidalgo County Court at Law No. 4 (Court 4) in Cause No. F-1068-02-4. The decree established that J.C.C. and L.S. are the parents of L.D.C. and ordered J.C.C. to pay $1000 per month in child support to L.S. and $10,000 in retroactive child support before August 20, 2006.    In addition to child support, J.C.C. was also ordered to pay specified lump sums to L.S. in 2004 and 2005 as part of their community property settlement.

In March 2012, L.S. filed a petition to modify the parent-child relationship that was assigned to Hidalgo County Court at Law No. 7 (Court 7), Cause No. F-1068-02-7.    L.S. sought a temporary restraining order, temporary injunction, modification of possession of L.D.C., and attorney's fees and costs.    Court 7 granted a temporary restraining order and scheduled a hearing.    J.C.C. filed an answer and subsequently a counter-petition. The parties engaged in discovery.    In April 2012, appellee, the Office of the Attorney General (OAG), intervened in the suit seeking orders for enforcement of J.C.C.'s child and medical support.    As part of its intervention, the OAG sought discovery to establish J.C.C.'s ability to pay child support.    In January 2013, L.S. filed a motion for sanctions and a request for immediate payment of child support.    L.S. and J.C.C. filed more than twenty pleadings and motions between March 2012 and March 2013 all assigned to Court

7. At some point J.C.C. filed for bankruptcy.[2]

In May 2016, four years after the OAG's intervention, there was a hearing in Master Court No. 1, a Title IV-D court, in Cause No. F-1068-02-7, before an associate judge on the OAG's motion to confirm J.C.C.'s child support arrears and for modification of the amount of child support. J.C.C. and the OAG appeared through counsel. L.S. appeared without counsel. During the hearing, J.C.C. claimed that he made $124,000 in direct payments to L.S. and had overpaid his child support. The OAG proffered a ledger of the registry payments made of approximately $19,000 and its calculation of arrearage totaling more than $100,000. L.S. provided an affidavit of direct payments received in the amount of $3600. Based upon the cancelled checks J.C.C. produced in support of his claim of direct payments, the OAG agreed that there might be no child support due. L.S. produced the divorce decree and advised the judge that some of the payments J.C.C. made and sought credit for were for amounts due as part of the community property in the divorce, not child support. The associate judge then returned the case to Court 7 to determine whether amounts J.C.C. claimed credit for were for community property payments under the decree or were direct child support payments. The OAG also informed the associate judge that J.C.C. failed to bring the wage information necessary for the OAG's motion to modify.

At the next hearing on August 4, 2016 in Court 7, L.S. and the OAG appeared through counsel. Neither J.C.C. or his attorney were present. The case was reset to

---

[2] J.C.C. alleges in his brief that he filed bankruptcy in October 2011, but there is nothing in the trial court's record to support that date. L.S. also mentioned his bankruptcy in her motion for immediate payment of child support filed in January 2013.

3

for the following week. L.S. and the OAG appeared through counsel; J.C.C. was present and advised the trial court that his attorney was in trial in another matter. Counsel appeared later. The trial court reviewed its jurisdiction and determined that the following motions were pending: the OAG's motion to confirm arrears and to modify, J.C.C.'s motion to confirm the arrears, and L.S.'s motion for sanctions, all of which related to the issue of past due medical and child support. Counsel for J.C.C. stated that the motion to modify "goes towards . . . a separate issue of his ability or non-ability rather to pay at the current moment." After a discussion, the parties agreed to reset the matter so that L.S. could obtain discovery regarding J.C.C.'s finances and J.C.C.'s counsel could complete his trial. The trial court set a status hearing and subsequent trial.

At the status hearing a month later, L.S. and the OAG appeared through counsel and J.C.C. appeared pro se. J.C.C. announced he would like to have time to obtain counsel. The trial court reset the hearing for October 25, 2016 on the motion to confirm arrearages and L.S.'s motion for sanctions.

Before the October 25 hearing, J.C.C. filed a plea to the jurisdiction, a motion to stay the proceedings, and a motion to strike L.S.'s 2013 motion for enforcement. In his motion to stay, J.C.C. argued that the trial court should request identification of the court of exclusive continuing jurisdiction from the state vital statistics unit and proceedings should be stayed until the information was obtained. TEX. FAM. CODE ANN. § 155.101 (West, Westlaw 2017 through 1st C.S.). As part of that motion, J.C.C. also sought a continuance to allow his accountant to review the OAG ledger and cancelled checks. In his plea to the jurisdiction, J.C.C. sought a transfer to Court 4. His motion to strike alleged that the present action was filed in the wrong court and should have been filed in

4

Court 4.

J.C.C. appeared pro se for trial. After hearing J.C.C.'s arguments, the trial court denied his motions, including the motion for continuance. Although J.C.C. requested a jury trial in April 2012 and paid the jury fee, he did not object to proceeding without a jury. The trial court permitted J.C.C. to telephone his accountant who came and testified that he had not performed any work on the ledger due to the press of other deadlines and had formed no opinion regarding the accuracy of the OAG's ledger. The trial court struck his testimony. J.C.C. was cross-examined by counsel for L.S. He did not claim that he was unable to pay the arrearage. The trial court orally rendered judgment that J.C.C. owed $111,588.08 in past due child support as of October 1, 2016, to be paid at the rate of $700 per month in addition to the previously ordered $1,000 per month child support, $2,500 in sanctions payable to L.S., and $10,000 in attorney's fees to L.S.'s counsel. The trial court set a hearing on entry of judgment on November 10, 2018, at which L.S. appeared through counsel and J.C.C. appeared pro se. The trial court signed a written judgment consistent with its oral pronouncement. J.C.C. appealed.[3]

## II.  JURISDICTION

We address issues two, three, and four, first because J.C.C. complains that the trial court lacked authority to issue the judgment that he claims is void. He argues that the Title IV-D associate judge had exclusive jurisdiction and his former wife's objection to the associate judge of the Title IV-D court was overruled as a matter of law. Effectively,

---

[3]  J.C.C. filed a motion to stay enforcement on appeal based upon his bankruptcy. The appeal was abated on April 6, 2017. The case was reinstated on October 18, 2017, after the OAG provided this Court a copy of the bankruptcy court's order discharging J.C.C. from bankruptcy in December 2012.

5

J.C.C. challenges Court 7's subject matter jurisdiction.

The proceedings in this case began in Court 4 which heard the 2004 divorce and established custody and support of L.D.C. in Cause No. F-1068-02-4, and Court 4 as the court of continuing, exclusive jurisdiction. *See* TEX. FAM. CODE ANN. § 155.001(a) (West, Westlaw 2017 through 1st C.S.); *In re C.G.*, 495 S.W.3d 40, 43 (Tex. App.—Corpus Christi 2016, pet. denied).

As part of a group of family law cases, Cause No. F-1068-02 was reassigned to Hidalgo County Court at Law No. 6 by agreement of the judges in January 2007.[4] On November 15, 2011, the case was transferred again by agreement of the judges to the newly formed Court 7. When L.S. filed a petition to modify the parent-child relationship in 2012, the case was assigned to Court 7 as the court of continuing jurisdiction. The case remained in Court 7 until March 24, 2016, when an associate judge of the Title IV-D court held a hearing on the OAG's motion to confirm arrears and for modification. The associate judge sent the parties back to Court 7. Court 7 referred the matter back to the associate judge. L.S.'s attorney objected to the referral and requested a status hearing in Court 7. The remaining hearings were in Court 7. J.C.C. did not object to proceeding in Court 7 until the hearing on October 25, 2016. J.C.C. filed a plea to the jurisdiction in which he alleged that "[t]he statutory jurisdictional prerequisite has not been met in this

---

[4] The Local Rules of Hidalgo County District Court provide:

**1.2.1 Agreement**. Any case may be transferred from one court to another by written Order of the Presiding Judge or by written Order of the judge of the court from which the case is transferred; provided in that latter instance the transfer must be with the written consent of the court to which the case is transferred.

L. R. 1.21 (1999).

6

cause."

## A.    Standard of Review

"'Jurisdiction' refers to a court's authority to adjudicate a case."  *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).   An order is void only if the court rendering it had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.   *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990); *In re Whitcomb*, 35 S.W.3d 220, 221 (Tex. App.—Corpus Christi 2000, no pet.).   Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Minton v. Gunn*, 355 S.W.3d 634, 639 (Tex. 2011) (citing *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010)); *In re C.G.*, 495 S.W.3d at 43.

## B.    Family Code and Exclusive Jurisdiction

The Texas Constitution and statutes confer jurisdiction on Texas courts.   *See* TEX. CONST. art. V, § 8 (establishing district courts as courts of general jurisdiction)*;* TEX. GOV'T CODE ANN. §§ 24.007, 24.008, 25.1102 (West, Westlaw 2017 through 1st C.S.) (granting Hidalgo county courts concurrent jurisdiction in family law cases with district courts).   "Judicial power" is the power of a court to decide and pronounce judgment and carry it into effect between parties who bring the case before it for decision, *Morrow v. Corbin*, 62 S.W.2d 641, 644 (Tex. 1933), and is divided among various named courts by means of express grants of "jurisdiction."   TEX. CONST. art. V, § 1[5]; *Eichelberger v.*

---

[5] The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

7

*Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). "When the constitution expressly grants jurisdiction over a particular subject matter to a particular court and not to another, then it is presumed that the jurisdiction so conferred is exclusive." *Eichelberger*, 582 S.W.2d at 398.

The family code provides that a court that has rendered final judgment in a SAPCR becomes the court of "continuing, exclusive jurisdiction" of suits involving minor children. *See* TEX. FAM. CODE. ANN. § 155.002 (West, Westlaw 2017 though 1st C.S.). The court of continuing, exclusive jurisdiction retains that jurisdiction until a case is transferred under the provisions of the family code or pursuant to a docket equalization order. *Id.* §§ 155.004, 155.102 (West, Westlaw 2017 though 1st C.S.); *In re G.R.M.*, 45 S.W.3d 764, 769–70 (Tex. App.—Fort Worth 2001, no pet.) (concluding that exchange of cases between district courts for docket equalization purposes is not prohibited by chapter 155 of the family code.); *see also Ward v. Ward*, No. 09-17-00024-CV, 2017 WL 6062133, at *4 (Tex. App.— Beaumont Dec. 7, 2017, pet. filed) (mem. op.).

But when the OAG intervenes in a case or sues in a county that has a Title IV-D court, such cases are automatically transferred to the Title IV-D court. TEX. FAM. CODE. ANN. § 201.101(d) (West, Westlaw 2017 through 1st C.S.); *Office of the Attorney General of Tex. v. C.W.H.*, 531 S.W.3d 183 (Tex. 2017). An associate judge of a IV-D court may refer a complex case back to a referring court. *Id.* § 201.104(a) (West, Westlaw 2017

---

The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.

TEX. CONST. art V, § 1.

through 1st C.S.).   An associate judge may not issue a final judgment.   *Id.* § 201.104(b). But if the associate judge's recommended order is not appealed to the referring court, the associate judge's order becomes final at that time.   *See Id.* § 201.1041(a) (West, Westlaw 2017 through 1st C.S.).

## C.    Discussion

J.C.C. argues that the Title IV-D court had exclusive jurisdiction over cases in which the OAG is involved based upon the Hidalgo County local rules or general orders. However, violation of a procedural rule in the assignment of a case to a court that otherwise has subject matter jurisdiction does not deprive the court to which the case is assigned of jurisdiction.   *See Reiss*, 118 S.W.3d at 443; *see also* TEX. R. CIV. P. 330(e); *In re G.A.J.*, No. 01-12-00256-CV, 2012 WL 4857925, at *3 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, no pet.) (mem. op.) (overruling claim that judgment was void when case was transferred in violation of local procedural rule).

Court 7 was the court of continuing, exclusive jurisdiction and had the authority granted by the Texas Constitution and the government code to render judgment on the child support arrearage and sanctions.   In Court 7, J.C.C. claimed Court 4 was the court of continuing jurisdiction and should have heard the child support arrears issue, unlike his present argument that the Title IV-D court had exclusive jurisdiction.   J.C.C.'s objection in the trial court does not comport with his issue on appeal.   As a result, he did not preserve error.   *See* TEX. R. APP. P. 33.1(a)(1); *In re M.M.W.*, 536 S.W.3d 611, 613 (Tex. App.—Texarkana 2017, no pet.); *Watts v. Watts*, 396 S.W.3d 19, 23 (Tex. App.—San Antonio 2012, no pet.).   We overrule J.C.C.'s issues two, three, and four.

### III.    FEDERAL REGULATIONS

By his first issue, J.C.C. argues that the judgment does not comport with federal regulations that set standards for setting and enforcing child support because the trial court never determined his ability to pay child support as ordered, which is one of the issues addressed by the federal regulations. *See* 45 C.F.R. §§ 302.56, 303.6(c)(4) (Westlaw 2018). Although J.C.C. filed a counter-petition in April 2012 seeking joint custody and primary possession of L.D.C., he did not raise an inability to pay child support in that pleading, nor did he raise that issue during the bench trial on arrearages. Because J.C.C. did not raise the applicability of the federal regulations in the trial court or raise the issue of his alleged inability to pay the arrearages, he has waived both issues. *See* TEX. R. APP. P. 33.1. We overrule J.C.C.'s first issue.[6]

### IV.    DUE PROCESS

By his fifth issue, J.C.C. argues that his due process rights were violated because he was deprived of a jury trial and the case was transferred from the Title IV-D court to Court 7. J.C.C. requested a jury trial in 2012 and paid a jury fee.

**A.    Jury Trial**

Even when a party timely requests a jury trial and pays the fee, the party is required to object to proceeding without a jury. Failure to object constitutes waiver. *In re M.P.B.*, 257 S.W.3d 804, 811 (Tex. App.—Dallas 2008, no pet.); *Vardilos v. Vardilos*, 219 S.W.3d 920, 923 (Tex. App.—Dallas 2007, no pet.) (holding jury waived when litigant did not bring

---

[6] Even if J.C.C. had not waived this issue, there is no private right of action under these statutes. *See Blessing v. Freestone*, 520 U.S. 329, 343–45 (1997); *see also Wehunt v. Ledbetter*, 875 F.2d 1558, 1565–66 (11th Cir. 1989); *Culliver v. Taylor*, 503 F.3d 397, 408 (5th Cir. 2007) (holding "[t]hese regulations simply do not purport to create an individual federal right in beneficiaries."); *Office of the Atty Gen. of Tex. v. C.W.H.*, 531 S.W.3d 178, 184 (Tex. 2017).

jury request to trial court's attention); *see also Martinez v. Martinez*, No. 04-09-00568-CV, 2010 WL 2601686, at *1 (Tex. App.—San Antonio June 30, 2010, pet. denied) (mem. op.) (reversing denial of jury trial after party brought jury demand to trial court's attention and trial court conducted bench trial); *Walker v. Walker*, 619 S.W.2d 196, 197–98 (Tex. App.—Tyler 1981, writ ref'd n.r.e.) (holding that when a party "comes into court and enters upon a hearing before the court without objection and calls upon the court to decide an issue of fact, he waives his right to a jury by entering upon the hearing without complaint.").

J.C.C. was silent when the trial court set the matters for bench trial and at the trial itself. As a result, he waived his right to a jury trial. TEX. R. APP. P. § 33.1(a)(1)(A).

## B.     Transfer from Title IV-D Court to Court 7

J.C.C. further argues that the statutory scheme involving Title IV-D matters requires an initial trial before the associate judge and then a de novo trial before the referring court, if desired. J.C.C. complains he lost his right to a second trial when the Title IV-D associate judge sent the case back to the referring court, which he argues violated his due process rights.

The Fourteenth Amendment of the United States Constitution protects against deprivation of life, liberty, or property by the state "without due process of law." U.S. CONST. amend XIV; *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). "The opportunity to be heard is the fundamental requirement of due process; it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Covarrubias v. Tex. Dep't. of Crim. Justice-Inst. Div.*, 52 S.W.3d 318, 324 (Tex. App.—Corpus Christi 2001, no pet.) (citing *Parratt*, 451 U.S. at 540). Evaluating procedural due process is a two-step process. *Id.* First, we must determine whether an existing liberty or property interest

11

was interfered with, and secondly, we determine whether the procedures were constitutionally sufficient. *Id.*

J.C.C. had a protected property interest in the monies that could be used to satisfy the alleged child support arrearage. "What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). *Mathews* dictates a three-factor inquiry to determine what process is due: 1) the private interest affected by the proceeding or official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* (citing *Mathews*, 424 U.S. at 335); *see also In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003).

J.C.C. was given notice of the allegations of unpaid child support and provided with the OAG's evidence in 2012, four years before the bench trial. At an initial hearing, J.C.C.'s attorney presented evidence of direct payments to L.S. to reduce his alleged arrearage, but because there was a factual dispute regarding interpretation of the divorce decree, the associate judge sent the matter back to Court 7. Several hearings were held in Court 7 at which J.C.C. appeared with and without counsel. At the final setting, he had the right to present evidence and to challenge the evidence presented against him.

J.C.C. invokes the statutory procedures in the family code that include a de novo review by the referring court. Those procedures were developed to speed the

12

determination of child support and other issues necessary to protect and provide for children pursuant to Title IV-D by using associate judges. *See C.W.H.*, 531 S.W.3d at 183–85 (discussing the purpose, history, and breadth of Title IV-D). However, the right to a trial de novo before an elected judge was designed to conform the proceedings to the constitutional grant of powers to the judiciary. *See In re D.L.M.*, 982 S.W.2d 146, 148 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Associate judges are creatures of statute and are not vested with the authority to render a final order under the Texas Constitution. *See* TEX. CONST*.* art. V, § 1; TEX. FAM. CODE ANN. § 201.104(b).[7]

Although J.C.C. has a private protected property interest in the funds that he may be required to use to satisfy child support arrears, the risk of erroneous deprivation using the full range of usual judicial procedures is minimal, and the probable value of two full trials on the merits in preventing an erroneous deprivation is also minimal. The government's interest in promptly determining support of children and minimizing unnecessary expenditure of public funds is substantial and supports the use of associate judges to speed the process, but the use of standard judicial procedures in this case does not mean that J.C.C. was deprived of due process. *C.W.H.*, 531 S.W.3d at 181. In the unusual case in which an associate judge has referred a complex case back to the referring court, the referring court should not be required to send it back on due process grounds solely to allow a litigant two bites at the apple. The likelihood of a different result than was obtained here or in other similar cases is minimal. J.C.C. received the full

---

[7] "A master may render and sign any order that is not a final order on the merits of the case." TEX. FAM. CODE ANN. § 201.104(b) (West, Westlaw 2017 through 1st C.S.).

13

extent of judicial process and his due process rights were not violated because the court of continuing, exclusive jurisdiction rendered the order for payment of child support arrears in the first instance, rather than the Title IV-D court. We overrule J.C.C.'s fifth issue.

## V.  APPOINTMENT OF COUNSEL

By his sixth issue, J.C.C. appears to claim that he was entitled to appointed counsel at the hearing to confirm arrearages even though he was not subject to imprisonment for contempt. He cites *Turner v. Rogers* in support. 564 U.S. 431 (2011). *Turner* is a civil contempt case in which the indigent father was sentenced to twelve months' imprisonment. Although the *Turner* Court reversed and remanded the case, it held that Turner was not categorically entitled to representation. *Id.* at 448-49.

Under the Fourteenth Amendment, the right to counsel is determined on a case-by-case basis in the court's exercise of sound discretion. *Ex parte McIntyre*, 730 S.W.2d 411, 415 (Tex. App.—San Antonio 1987, no writ) (en banc) (citing *Middendorf v. Henry*, 425 U.S. 25, 42–44 (1976)). Texas provides for appointment of counsel in some civil and family law cases. *See* TEX. FAM. CODE ANN. §§ 107.021, 157.163(d), (e) (West, Westlaw 2017 through 1st C.S.); *see also* TEX. GOV'T CODE ANN. §§ 24.016, 26.049 (West, Westlaw 2017 through 1st C.S.). When a party against whom child support enforcement is sought is *not* subject to contempt, the trial court is not required to admonish the party that he has the right to appointed counsel. *See* TEX. FAM. CODE ANN. § 157.163(d), (e) (emphasis added); *see also Villarreal v. Villarreal*, No. 14-03-00577-CV, 2004 WL 1381025, at *2 (Tex. App.—Houston [14th Dist.] June 22, 2004, no pet.) (mem. op.) (holding "a defendant in a suit filed to reduce unpaid child support to judgment is not

14

entitled to be so advised [of his right to counsel] absent a threat of incarceration.").

At the enforcement hearing, the trial court was aware that J.C.C. was appearing pro se. J.C.C. announced partway through the hearing, "the Court knows that I'm pro se and that I have no legal representation. So I just want to state that for the record." At that time J.C.C. did not request that the trial court appoint counsel, nor did he claim he was indigent. Later during the hearing, while J.C.C. was being questioned by counsel for his former wife, J.C.C. said, "[a]nd whatever time is proper I would like to invoke my right to a public defender if this is leading towards —." At that time the trial court confirmed with opposing counsel that there was no motion for contempt or imprisonment pending. The Court responded, "[h]e's not entitled to counsel then."

J.C.C.'s due process rights under the Fourteenth Amendment were respected. *See Turner*, 564 U.S. at 448-49. He was not entitled to appointed counsel in these circumstances. *See* TEX. FAM. CODE ANN. § 157.163(d), (e). We overrule his sixth issue.

## VI. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Delivered and filed the
13th day of December, 2018.

15