# IN THE SUPREME COURT OF TEXAS

No. 15-0944

THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, PETITIONER,

v.

C.W.H., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

**Argued September 12, 2017**

JUSTICE BOYD delivered the opinion of the Court.

This is an appeal from a Title IV-D associate judge's order modifying conservatorship and child support for three children. The primary issue is whether the Title IV-D associate judge had authority to enter an order modifying conservatorship. The Legislature recently amended the Family Code to expressly grant Title IV-D associate judges such authority. The court of appeals held that Title IV-D judges had no such authority before the recent amendments. We hold that the Code's prior version granted Title IV-D associate judges authority to modify conservatorship when, as here, the modification related to the establishment, enforcement, or modification of a child-support obligation. We thus disagree with the court of appeals' decision to reverse the associate judge's order on that ground. However, the court of appeals also reversed on the independent ground that the associate judge erred by failing to consider the children's father's

request to participate in the hearing remotely from prison. We agree with that holding and affirm the court of appeals' judgment solely on that ground.

## I.
## Background

C.W.H. (Father) and J.S. (Mother) have three children. In 2010, a Nacogdoches County district court entered a final order naming Father as the children's sole managing conservator, having primary possession of the children and the right and duty to care for them. The same order named Mother a possessory conservator with limited visitation rights and ordered her to pay child support to Father. Later that year, Father left the children with Mother's parents (Grandparents) and gave them a power of attorney so that they could take care of the children. Mother soon moved in with Grandparents and began sharing that responsibility. In July 2011, Grandparents filed a motion to modify the 2010 order to name themselves as the children's managing conservators, alleging that Father had voluntarily relinquished possession and control of the children. Grandparents apparently never pursued a hearing or sought any court action on their motion.

Three years later, in 2014, the Office of the Attorney General of Texas (OAG) filed a "Notice of Change of Status and Motion for Further Orders" in the same case. The OAG asserted that the children lived with Mother and that Father had voluntarily relinquished custody. The OAG requested that the court modify the 2010 order to make "appropriate provisions for the conservatorship of the children" and modify the child-support obligations accordingly.[1]

---

[1] The OAG was apparently not aware when it filed its notice and motion that Grandparents had previously filed a motion to modify the 2010 order. After discovering Grandparents' motion, the Attorney General filed an amended notice and motion in which it expressly noted that "there is still apparently a legal action pending in this cause brought by" Grandparents.

After the OAG filed its motion, the case was referred to the Title IV-D associate judge appointed to hear Title IV-D cases in Nacogdoches County. Father, who was then incarcerated, filed a *pro-se* answer objecting to modification of the 2010 order. Father asserted that he was indigent and requested that the court appoint an attorney to represent him. He also requested that the court issue a bench warrant so that he could attend any hearing in person, and alternatively asked that the court either delay any hearing until after he was released from prison or permit him to participate from prison via video, telephone, or another alternative means. Father supported his answer with an affidavit in which he admitted he had left the children with Grandparents but explained that he intended that arrangement to be temporary and never intended to relinquish custody of the children.

The Title IV-D associate judge held a hearing on the OAG's motion on November 25, 2014. Father did not attend or participate in the hearing. Following the hearing, the associate judge entered an order appointing Mother and Grandparents as joint managing conservators. The order expressly denied Father's request for a bench warrant, found that Father, "although duly notified, did not appear" and was currently incarcerated, and ordered Father to have no contact with the children "at this time." Although the new order deleted the 2010 order's requirement that Mother pay child support to Father, it did not require Father to pay child support because he was incarcerated and had no income.

The parties' subsequent pleadings are somewhat confusing. Father refiled his original answer and affidavit on December 2, 2014. The district court then appointed counsel to represent Father. Father's new counsel filed a motion for new trial, arguing that the Title IV-D associate judge erred by failing to grant a bench warrant or continuance or otherwise permit Father to

3

participate in the hearing. On January 9, 2015, the OAG filed an "Original Answer" generally denying all of Father's pleadings. On February 23, Father filed a notice of appeal from the Title IV-D associate judge's November 25 order.

On appeal, Father argued that the associate judge abused his discretion by failing to consider Father's request to participate in the trial remotely from prison. The OAG filed a letter conceding that the associate judge had erred in that manner. The court of appeals reversed and remanded the case, stating two independent reasons: (1) the Title IV-D associate judge had no authority to hear a motion to modify a conservatorship order and (2) the Title IV-D associate judge erred by failing to consider Father's request to participate in the hearing. — S.W.3d —.

The OAG requested our review. It agrees we should affirm the court of appeals' judgment because the Title IV-D associate judge failed to consider Father's request to participate in the hearing. But the OAG contends that the court of appeals erred by holding that the Title IV-D associate judge lacked authority to modify conservatorship. According to the OAG, this erroneous holding could undermine thousands of existing orders that Title IV-D associate judges issued in other cases before the recent statutory amendments. In light of the OAG's concession, we will affirm the court of appeals' judgment on the ground that the Title IV-D associate judge failed to consider Father's request to participate in the hearing. But we will address the court's alternative holding that the Title IV-D associate judge lacked authority to modify conservatorship.

## II.
### Title IV-D Associate Judge

Subchapter IV, Part D of the federal Social Security Act creates a child-support-enforcement program through which the federal government provides matching funds to encourage and enable states and U.S. territories to locate noncustodial parents, establish paternity,

4

enforce child-support obligations, recover and distribute child-support payments, and ensure "that assistance in obtaining support will be available under this part to all children . . . for whom such assistance is requested." 42 U.S.C. § 651. The program is designed to "help strengthen families by securing financial support for children from their noncustodial parent on a consistent and continuing basis, and by helping some families to remain self-sufficient and off public assistance by providing the requisite [child-support-enforcement] services." Carmen Solomon-Fears, *Child Support: An Overview of Census Bureau Data on Recipients* 1 (Congressional Research Service, 2016), https://fas.org/sgp/crs/misc/RS22499.pdf.

The federal statute requires each participating state to adopt a "state plan" and designate an agency responsible for administering the plan. 42 U.S.C. § 654. The Texas Legislature designated the OAG as the Texas Title IV-D agency and required the OAG to "develop and implement a statewide integrated system" for child-support enforcement. TEX. FAM. CODE §§ 231.001, .0011(a). In 2015, the OAG collected and distributed nearly $3.9 billion in child-support payments to benefit more than 1.7 million Texas children. OFFICE OF CHILD SUPPORT ENFORCEMENT, ANNUAL REPORT TO CONGRESS FY 2015 111–12 (2015), https://www.acf.hhs.gov/css/resource/fy-2015-annual-report-to-congress. Nationwide, the Child Support Program collected over $28.6 billion for the benefit of about 16 million children. *Id.* at iii. Participating states also collected nearly $4 billion through income-withholding orders, making the total of all collections approximately $32.4 billion. *Id.*

The Family Code defines a "Title IV-D case" as any case in which the OAG provides Title IV-D services "relating to the location of an absent parent, determination of parentage, or establishment, modification, or enforcement of a child support . . . obligation." TEX. FAM. CODE

5

§ 101.034. The Code requires courts to give Title IV-D cases priority over all other cases. *Id.* § 201.110(b). More specifically, courts must "complete" at least seventy-five percent of all Title IV-D cases within six months and at least ninety percent within one year. *Id.* § 201.110(a). To assist the courts in meeting these deadlines, chapter 201 subchapter B authorizes the presiding judge of each judicial administrative region to appoint an "associate judge" for any court that "require[s] the appointment of a part-time or full-time associate judge to complete each Title IV-D case" within the time limits. *Id.* § 201.101(a), (b).

A Title IV-D associate judge appointed under subchapter B "may render and sign any order that is not a final order on the merits of the case" and "may recommend to the referring court any order after a trial on the merits." *Id.* § 201.104(b), (c). Any party who is dissatisfied with the associate judge's order or judgment may request a de novo hearing before the referring court by filing a notice of that request "not later than the third working day after the date the associate judge signs the proposed order or judgment." *Id.* § 201.1042(b). If a party timely requests a de novo hearing, the provisions of subchapter A generally govern that request. *Id.* § 201.1042(a). The referring court must conduct the de novo hearing within thirty days. *Id.* § 201.015(f). The parties may present witnesses at the de novo hearing, and the referring court "may also consider the record from the hearing before the associate judge, including the charge to and verdict returned by a jury." *Id.* § 201.015(c). If the associate judge conducted a jury trial before issuing the proposed order or judgment, the parties may not demand a second jury. *Id.* § 201.015(i).

If the parties waive or fail to timely request a de novo hearing, the Title IV-D associate judge's proposed order or judgment automatically becomes the referring court's order or judgment

6

"by operation of law without ratification by the referring court," unless the order provides for enforcement by contempt or by immediate incarceration of a party. *Id.* § 201.1041(a), (b).

If a regional presiding judge appoints an associate judge under section 201.101, "all Title IV-D cases shall be referred to the associate judge by a general order for each county," issued by either the regional presiding judge or the judge of the court for which the associate judge is appointed. *Id.* § 201.101(d). Before the OAG's filing of its motion in this case, the presiding judge of the First Administrative Judicial Region entered general orders finding that the region's courts require an associate judge to timely complete Title IV-D cases, appointing Title IV-D associate judges, and referring all the region's Title IV-D cases to those associate judges. When the OAG filed its motion in this case, the case was automatically referred to the Title IV-D associate judge pursuant to these general orders.

### III.
### Title IV-D Case

Before addressing the primary issue of whether the Title IV-D associate judge had authority to hear conservatorship issues, we must first address the preliminary issue of whether this case properly belonged before the Title IV-D associate judge. *See id.* In the court of appeals, Father argued that the associate judge had no jurisdiction at all because this is not a "Title IV-D case." The court of appeals rejected that argument, concluding that the OAG "instituted a Title IV-D case" when it filed its motion to modify the district court's 2010 order. — S.W.3d at —.

We agree with the court of appeals. This is a Title IV-D case because the OAG is providing services in this case relating to the modification of a child-support obligation. TEX. FAM. CODE § 101.034. The OAG requested in its motion that the court modify the 2010 order to change both the conservatorship provisions and the child-support obligations to reflect the fact that—according

7

to the OAG—Father had voluntarily relinquished custody of the children. Once the OAG filed that motion seeking to modify the child-support obligations, the presiding judge's general order automatically referred the case to the Title IV-D associate judge.

Father argues that the OAG cannot "transform" a pending suit into a Title IV-D case simply by "intervening" in the case. Father complains that reading the statute to allow the OAG to transform a private suit into a Title IV-D case deprives the parties of their "right" to litigate their dispute before an elected judge and forces them into a "more informal forum" before an unelected judge. Although that may be true, Father overlooks that the Code grants the parties the right to a de novo hearing before the elected judge. *See id.* § 201.1042(b). The associate judge's proposed order or judgment becomes the referring court's order or judgment only if the parties waive or fail to timely request a de novo hearing. *Id.* § 201.1041(a), (b). We assume that the Legislature believed that the efficiencies that Title IV-D associate judges provide for the collection and disbursement of child support in all cases outweigh any burden that appearing first before a Title IV-D associate judge may create in any particular case.

Father notes that the prior version of section 101.034 defined a "Title IV-D case" by referring only to services relating to the modification of a *child-support* obligation, not to the modification of *conservatorship*. *See id.* § 101.034. By contrast, Father notes, the Family Code included conservatorship-modification suits among the definition of "suits affecting the parent-child relationship." *Id.* § 101.032(a). Father contends that the Legislature's failure to expressly define a Title IV-D case to include a suit affecting the parent-child relationship or a conservatorship-modification suit precluded this case from qualifying as a Title IV-D case, despite the OAG's motion seeking to modify child support.

8

We disagree. Under the Family Code's plain language, a Title IV-D case includes any "action" in which the OAG is providing Title IV-D services relating to the modification of a child-support obligation. *Id.* § 101.034. "The term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in court." *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995); *see Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563–64 (Tex. 2014) (plurality op.) (citing BLACK'S LAW DICTIONARY at 28 (7th ed. 1999)) ("The common meaning of the term "action" refers to an entire lawsuit or cause or proceeding, not to discrete 'claims' or 'causes of action' asserted within a suit, cause, or proceeding."). Although the applicable version of the Family Code did not specifically address the effect of the OAG's decision to provide child-support modification services by "intervening" into an already pending action, it also did not specifically except such actions from its definition of a Title IV-D case. Nor did it except actions in which the OAG seeks to modify conservatorship as well as a child-support obligation. The Code was simply silent on the issue. Yet we must apply the plain language the statute actually used. Because the OAG is providing services in this case relating to the modification of a child-support obligation, we agree with the court of appeals and the OAG that this is a Title IV-D case under the statute's former version.

## IV.
## Conservatorship Disputes

Having determined that this case became a Title IV-D case when the OAG filed its motion to modify the 2010 order, we now turn to the primary issue of whether the Title IV-D associate judge had authority to hear the OAG's motion to modify conservatorship. The court of appeals

held that the Family Code, as it existed in 2014, granted the OAG no such authority.[2] Father adopts

the court of appeals' reasoning and also argues that federal law did not authorize the OAG to seek

to modify a conservatorship order. We conclude that the law granted the OAG authority to seek to

modify conservatorship and authorized Title IV-D associate judges to decide that issue when it

relates to the establishment or modification of a child-support obligation.

## A.    OAG's authority

Father first contends that the OAG had no legal authority to seek to establish or modify

conservatorship. We look to state law to determine the OAG's authority, "because the Attorney

General can only act within the limits of the Texas Constitution and statutes." *Perry v. Del Rio*, 67

S.W.3d 85, 92 (Tex. 2001). Here, however, the relevant state statute incorporated federal law by

authorizing the OAG to "provide all services required or authorized to be provided by [Title IV-

D], including"

> (1) parent locator services;
> (2) paternity determination;
> (3) child support and medical support establishment;
> (4) review and adjustment of child support orders;
> (5) enforcement of child support and medical support orders; and
> (6) collection and distribution of child support payments.

---

[2] As mentioned, the Legislature has since amended the Family Code to expressly grant the OAG authority to seek to modify conservatorship and to expressly grant Title IV-D associate judges authority to decide conservatorship issues. For example, section 231.101(d) now provides that the OAG, acting as the state's Title IV-D agency, "may file a petition for modification under Chapter 156," which governs suits to "modify an order that provides for the conservatorship, support, or possession of and access to a child." Act of June 8, 2015, 84th Leg., R.S., ch. 963, § 2, 2015 Tex. Gen. Laws 3407, 3408 (codified at TEX. FAM. CODE § 231.101(d)); *see also* TEX. FAM. CODE § 156.001. Section 101.034 now defines a "Title IV-D case" to include "a suit for modification filed by the Title IV-D agency under Section 231.101(d)." Act of May 29, 2017, 85th Leg., R.S., ch. 912, § 1.01–.02, 2017 Tex. Gen. Laws —,— (codified at TEX. FAM. CODE § 101.034). And section 201.104 now expressly provides that a Title IV-D associate judge has the power to hear and render an order "on any matter necessary to be decided in connection with a Title IV-D service, including . . . (5) a suit affecting the parent-child relationship; and (6) a suit for modification under Chapter 156." Act of May 25, 2017, 85th Leg., R.S., ch. 699, § 1, 2017 Tex. Gen. Laws —,— (codified at TEX. FAM. CODE § 201.104(e)). Because all of these amendments became effective after the Title IV-D associate judge received, heard, and decided this case, we need not consider these amendments here. Unless otherwise noted, references to the Family Code are to the version in effect at the time this case was pending in the trial court.

TEX. FAM. CODE § 231.101(a). Because this list did not include establishment or modification of conservatorship, Father contends that the OAG was not authorized to provide such services. This list, however, is expressly non-exclusive: the section authorized the OAG to provide all services Title IV-D requires or authorizes a participating state's IV-D agency to provide, "including" those listed. *Id.*

Section 231.101(a) requires that we look to Title IV-D to determine whether the OAG had authority to seek to modify conservatorship. The express purpose of the Title IV-D program is to ensure "that assistance in obtaining support will be available under this part to all children . . . for whom such assistance is requested." 42 U.S.C. § 651. To fulfill that purpose, the statute requires participating states' Title IV-D agencies to "provide services relating" not only to the "enforcement" or "modification" of existing child-support obligations, but also to the "establishment" of a child-support obligation that does not already exist. *Id.* § 654(4)(A). The statute also requires state agencies to "establish a service to locate parents" and authorizes them to obtain information about a parent's location not only for "the purpose of" establishing and "setting the amount of" a new child-support obligation, *id.* §§ 653(a)(2), 653a(h)(1), but also for the purpose of "making or enforcing a *child custody* or visitation determination," *id.* § 654(8) (emphasis added); *see also id.* § 663(d)(1) (defining "custody or visitation determination" to mean a court judgment, decree, or order "providing for the custody or visitation of a child," including "initial orders and modifications").

In this case, the OAG sought to modify the 2010 order to reflect that Father had become the "noncustodial" parent and Mother had become the parent "with whom such children [were] living," and that determination related to the OAG's effort to modify the parents' child-support

11

obligations. *See id.* § 654. Because the OAG's request to modify conservatorship was a service that related to the establishment or modification of a child-support obligation, it constituted a service the federal statute authorized the OAG to provide. *See id.* § 654(4)(A).

Although the former version of the Texas Family Code, like the federal statute, did not expressly authorize the OAG to seek modification of conservatorship, it did authorize the OAG to provide all services that Title IV-D requires or authorizes. TEX. FAM. CODE § 231.101(a). The Code also granted governmental entities standing to file both an original suit to establish conservatorship and a suit to modify a conservatorship order. *Id.* §§ 102.003, 156.002. And the Code also expressly authorized the OAG, as the state's Title IV-D agency, to review a support order at any time on a showing of a material and substantial change in circumstances, taking into consideration the best interests of the child. *Id.* § 231.101(d). We conclude that the Family Code authorized the OAG to seek to modify the children's conservatorship because doing so related to the OAG's effort to modify the parents' child-support obligations in light of the change in the children's circumstances.

**B.     Title IV-D associate judge's authority**

We also conclude that subchapter B of chapter 201 authorized the Title IV-D associate judge to hear the OAG's motion to modify conservatorship. Section 201.104—entitled "Powers of Associate Judge"—broadly authorized Title IV-D associate judges to "refer a complex case back to the judge for final disposition after the associate judge has recommended temporary support," "render and sign any order that is not a final order on the merits of the case," and "recommend to the referring court any order after a trial on the merits." *Id.* § 201.104(a)–(c). Subsection (d) then limited that authority by providing that "[o]nly the referring court may hear and render an order

12

on a motion for postjudgment relief, including a motion for a new trial or to vacate, correct, or reform a judgment." *Id.* § 201.104(d). But "[n]otwithstanding Subsection (d)," subsection (e) authorized Title IV-D associate judges to "hear and render an order on"

(1)      "a suit to modify or clarify an existing child support order;"

(2)      "a motion to enforce a child support order or revoke a respondent's community supervision and suspension of commitment;"

(3)      "a respondent's compliance with the conditions provided in the associate judge's report for suspension of the respondent's commitment;" and

(4)      "a motion for postjudgment relief, including a motion for a new trial or to vacate, correct, or reform a judgment, if neither party has requested a de novo hearing before the referring court."

*Id.* § 201.104(e).

Because the list set forth in subsection 201.104(e) did not expressly authorize Title IV-D associate judges to hear conservatorship issues, the court of appeals concluded that associate judges lacked such authority. But subsection 201.104(e) did not purport to provide an exclusive list of a Title IV-D associate judge's authority. Subsection (e) merely listed exceptions to subsection (d), which prohibited a Title IV-D associate judge from ruling on a motion for post-judgment relief. *See id.* § 201.104(d). The court of appeals' holding overlooks subsections (b) and (c), which authorized Title IV-D associate judges to "render and sign *any* order that is not a final order on the merits of the case" and "recommend to the referring court *any* order after a trial on the merits." *Id.* § 201.104(b), (c) (emphases added).

The Code authorized Title IV-D associate judges to render and recommend such orders to ensure that the courts "complete each Title IV-D case" within the statutory deadlines. *Id.* § 201.101(a). Because this is a Title IV-D case, section 201.104 authorized the Title IV-D associate judge to render and recommend any order necessary to timely "complete" the case, including an order on conservatorship related to the establishment of a child-support obligation. And to the

13

extent that the OAG's motion was a "motion for postjudgment relief," subsection 201.104(e)(4) authorized the Title IV-D associate judge to hear and render an order on that motion because no party had "requested a de novo hearing before the referring court." *Id.* § 201.104(e)(4). We conclude that the previous version of chapter 201 subchapter B authorized the Title IV-D associate judge to hear and decide the OAG's motion to modify conservatorship and child support in this case.[3]

**V.**
**Conclusion**

We hold that the former version of the Texas Family Code authorized the OAG to seek to modify the conservatorship provisions of the 2010 order because that service related to the establishment, modification, or enforcement of a child-support obligation. Once the OAG filed its motion to modify conservatorship and the child-support obligations, this became a Title IV-D case and the Title IV-D associate judge was authorized to render or recommend "any" order to "complete" the case. We thus disagree with the court of appeals' holding that the Title IV-D associate judge lacked authority to enter the order modifying conservatorship and child support in this case. We affirm the court of appeals' judgment reversing the associate judge's order and remanding the case, however, solely on the independent ground that the associate judge failed to consider Father's request to participate in the hearing by alternative means.

---

[3] Having concluded that subchapter B authorized the Title IV-D associate judge to enter the order, we need not consider the parties' arguments addressing whether the broader provisions of subchapter A also granted the associate judge such authority. *See* TEX. FAM. CODE § 201.102 (providing that subchapter A's provisions apply to a Title IV-D associate judge "except that, to the extent of any conflict between" subchapter B and subchapter A, subchapter B prevails).

14

_____
Jeffrey S. Boyd
Justice


Opinion delivered:  October 20, 2017