

# Fourth Court of Appeals

## San Antonio, Texas

### CONCURRING OPINION

No. 04-18-00918-CV

**IN THE INTEREST OF Z.O.M.** and K.R.M., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CI09446
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice
Concurring Opinion by: Rebeca C. Martinez, Justice
Concurring and Dissenting Opinion by: Sandee Bryan Marion, Chief Justice

Sitting:     Sandee Bryan Marion, Chief Justice
             Rebeca C. Martinez, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed: April 1, 2020

I join in the judgment of the court because section 231.211 of the Family Code prohibits

the imposition of attorney's fees against Matthews.

Whether section 231.211 bars an award of fees in this case depends on whether this is a

Title IV-D case. *See* TEX. FAM. CODE ANN. § 231.211(a). The Family Code defines "Title IV-D

case" as:

> an action in which services are provided by the Title IV-D agency under Part D,
> Title IV, of the federal Social Security Act (42 U.S.C. Section 651 et seq.), relating
> to the location of an absent parent, determination of parentage, or establishment,
> modification, or enforcement of a child support, medical support, or dental support
> obligation, including a suit for modification filed by the Title IV-D agency under
> Section 231.101(d) and any other action relating to the services that the Title IV-D
> agency is required or authorized to provide under Section 231.101.

*Id.* § 101.034. Section 231.101(a), in turn, provides:

The Title IV-D agency may provide all services required or authorized to be provided by Part D of Title IV of the federal Social Security Act (42 U.S.C. Section 651 et seq.), including:

(1) parent locator services;

(2) paternity determination;

(3) child support, medical support, and dental support establishment;

(4) review and adjustment of child support orders;

(5) enforcement of child support, medical support, and dental support orders; and

(6) collection and distribution of child support payments.

*Id.* § 231.101(a).

Morrison argues that a Title IV-D case does not include an action to enforce a possession and access order because such actions are not specifically included in the definition of a "Title IV-D case" under Family Code section 101.034 and are not specifically enumerated as a service that a Title IV-D agency can provide under section 231.101(a). However, lack of enumeration does not end the inquiry. *See Office of the Attorney Gen. of Tex. v. C.W.H.*, 531 S.W.3d 178, 184 (Tex. 2017). As the supreme court has explained, the list of services enumerated in section 231.101(a) "is expressly non-exclusive: the section authorize[s] the OAG to provide all services Title IV-D requires or authorizes a participating state's IV-D agency to provide, 'including' those listed." *Id.* Thus, to determine whether section 231.101(a) authorizes an action to enforce a court order for possession and access, we must look to Title IV-D in federal law. *See id.* (looking to Title IV-D to determine whether the OAG had authority to seek to modify a conservatorship order under Family Code section 231.101(a)).

The express purpose of the Title IV-D program is to "enforc[e] the support obligations owed by noncustodial parents to their children . . ., locat[e] noncustodial parents, establish[] paternity, obtain[] child and spousal support, and assur[e] that assistance in obtaining support will

be available . . . to all children . . . for whom such assistance is requested." 42 U.S.C. § 651. To fulfill that purpose, the statute requires state agencies to "establish a service to locate parents" and authorizes them to obtain information about a parent's location not only for "the purpose of" establishing and "setting the amount of" a new child-support obligation, *id.* §§ 653(a)(2), 653a(h)(1), but also for the purpose of "making or enforcing a child custody or visitation determination." *Id.* § 654(8); *see also id.* § 663(d)(1) (defining "custody or visitation determination" to mean a court judgment, decree, or order "providing for the custody or visitation of a child"); *C.W.H.*, 531 S.W.3d at 184–85 (describing federal statutory regime). Title IV-D also provides that the Administration for Children and Families, a federal agency, shall make grants to enable states: "to establish and administer programs to support and facilitate noncustodial parents' access to and visitation of their children, by means of activities including mediation (both voluntary and mandatory) . . . [and] visitation enforcement (including monitoring, supervision and neutral drop-off and pickup) . . . ." 42 U.S.C. § 669b(a). States are required to submit annual self-assessments. *Id.* § 654(15)(A). Federal regulations provide that states, in their self-assessments, may describe initiatives that improve Title IV-D program performance, including "[a]ccess/visitation projects initiated to improve non-custodial parents' involvement with the children[.]" 45 C.F.R. § 308.3(b)(7).

Under a plain statutory construction of the definition of "Title IV-D case," we must give effect to the statute as a whole and every part of it. *See In re C.Y.K.S.*, 549 S.W.3d 588, 591 (Tex. 2018) (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). In doing so, we must consider the definitions of "Title IV-D case" and "Title IV-D agency," as stated in Family Code sections 101.034 and 231.101(a), respectively, as well as the incorporation in these sections of broad authorizations of authority under the federal Social Security Act. It is not sufficient to look solely to state law as the dissent does. The DRO's motion to enforce an access and possession

order is a service authorized by a Title IV-D agency, *see* TEX. FAM. CODE ANN. § 231.101(a), because the underlying federal authorization to a Title IV-D agency extends to an action by a Title IV-D agency to improve parents' access to and visitation of their children, *see* 42 U.S.C. §§ 654(8), 669b(a); 45 C.F.R. § 308.3(b)(7). Therefore, the DRO's child-custody enforcement action is a "Title IV-D" case. *See* TEX. FAM. CODE ANN. § 101.034; *cf. C.W.H.*, 531 S.W.3d at 184–85 (holding the OAG's request to modify conservatorship was related to its effort to modify child-support obligations and was a service authorized under Title IV-D).

This reasoning is confirmed by reference to Family Code section 231.002, which further enumerates the powers and duties of a Title IV-D agency. Under section 231.002, one of the specifically enumerated powers given to a Title IV-D agency concerns the enforcement of possession and access orders. When certain conditions are satisfied, section 231.002 authorizes a Title IV-D agency, "to pursue negotiations and enter into reciprocal arrangements with the federal government, another state, or a foreign country or a political subdivision of the federal government, state, or foreign country to: . . . establish mechanisms to enforce an order providing for possession of or access to a child rendered under Chapter 153." TEX. FAM. CODE ANN. § 231.002(d)(1)(B).

In addition, my interpretation of "Title IV-D case," which results in Matthews receiving protection from an award of attorney's fees, comports with legislative intent. Chapter 231, as a whole, "reflects the Legislature's broader intent . . . to promote the OAG's wide-ranging involvement in Title IV–D litigation in part by reducing the associated costs." *In re C.Y.K.S.*, 549 S.W.3d at 592 (citing TEX. FAM. CODE ANN. §§ 231.202, .204, .211(a) as provisions expressly limiting the fees and costs the OAG may incur in the course of Title IV–D litigation). To interpret the term "Title IV-D case" in a way that could burden an indigent parent with an adverse judgment for attorney's fees would discourage the OAG, or its delegate the DRO, from pursuing the full aims of Title IV-D.

I respectfully depart from Justice Chapa in that I would take judicial notice of statements on the OAG website establishing that it has delegated Title IV-D authority related to access and visitation programs to the DRO. *See In re Office of Attorney Gen.*, 422 S.W.3d 623, 625 n.1 (Tex. 2013) (explaining Family Code section 231.002(c) provides for delegation of Title IV-D duties from the OAG to a county domestic relations office). 42 U.S.C. section 669b(e)(1) provides that states awarded federal grants related to access and visitation programs may administer state programs through contracts with local public agencies.[1] The OAG's website states: "[T]he OAG . . . receive[s] special funding to provide access and visitation services through local organizations."[2] The website provides a link to a directory of local providers of access and visitation services, and the search result for "Legal Services for Enforcement" in Bexar County, Texas list a single provider—the DRO.[3] Morrison acknowledges the OAG has delegated Title IV-D authority to the DRO but contends the delegation does not extend to access and visitation services.[4] However, Morrison does not specifically contest the authenticity of the OAG's website or the accuracy of the information provided. Under these circumstances, the fact of OAG's delegation of access and visitation programs in Bexar County to the DRO is not subject to reasonable dispute. *See* TEX. R. EVID. 201(a)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The DRO requested in its brief and at oral argument that we take judicial notice of the delegation based on these webpages; therefore, we

---

[1] The Family Code authorizes the OAG, as the state's Title IV-D agency, to expend these federal funds for the purpose of carrying out its Title IV-D duties as well as to initiate legal actions and to enter into agreements as necessary to carry out Title IV-D duties. *See* TEX. FAM. CODE ANN. § 231.002(a).

[2] *Access and Visitation*, KEN PAXTON: ATT'Y GEN. OF TEX., https://www.texasattorneygeneral.gov/child-support/families-and-parenting/access-and-visitation (last visited Mar. 13, 2020).

[3] *Access and Visitation Locations*, Ken Paxton: Att'y Gen. of Tex., https://csapps.oag.texas.gov/access/search?counties_served=5671&legal_services=1 (last visited Mar. 13, 2020).

[4] Morrison also argues that we need not reach the matter of delegation because access and visitation services are not Title IV-D services. I reject this argument for the reasons stated above.

must do so. *See* Tex. R. Evid. 201(c)(2) (providing a court "must take judicial notice if a party requests it and the court is supplied with the necessary information"); *Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) (per curiam) ("A court of appeals has the power to take judicial notice for the first time on appeal.").

Family Code section 231.211 applies because the OAG provided services to Matthews through a delegation of authority to the DRO and because this is a "Title IV-D case." Therefore, section 231.211 precludes an attorney's fees award against Matthews. I join in the court's judgment to reverse the attorney's fees award and render a take-nothing judgment, and I do not reach Matthews's other issues.[5]

Rebeca C. Martinez, Justice

---

[5] I join also in the unanimous conclusion that this court has jurisdiction and in the decision to deny Morrison's motion for appellate sanctions.