

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING AND DISSENTING OPINION

No. 04-18-00918-CV

**IN THE INTEREST OF Z.O.M.** and K.R.M., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CI09446
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice
Concurring Opinion by: Rebeca C. Martinez, Justice
Concurring and Dissenting Opinion by: Sandee Bryan Marion, Chief Justice

Sitting:      Sandee Bryan Marion, Chief Justice
              Rebeca C. Martinez, Justice
              Luz Elena D. Chapa, Justice

Delivered and Filed: September 30, 2020

I withdraw my Concurring and Dissenting Opinion dated April 1, 2020 and substitute this opinion in its stead. Because I would hold (1) this is not a Title IV-D case in which Family Code section 231.211 applies, and (2) the trial court was within its discretion to award attorney's fees pursuant to Family Code section 106.002, I respectfully dissent. I believe the unfortunate result of the Opinion and the Concurring Opinion[1] is to permit a parent who clearly is not indigent to utilize the free services of a domestic relations office to assert claims in a custody dispute without bearing any responsibility for the responding parent's attorney's fees if the trial court, in its discretion, determines the claims are without merit.

---

[1] I refer to Justice Luz Elena Chapa's opinion issued this date as the Opinion and Justice Rebeca Martinez's opinion issued April 1, 2020 as the Concurring Opinion.

**Family Code Section 231.211 Does Not Apply**

Appellant the Bexar County Domestic Relations Office ("the DRO"), as "Intervenor," filed a motion to enforce an order for possession and access against appellee Melody Morrison in a suit affecting the parent-child relationship. At the hearing on the motion, the DRO's counsel announced her appearance "on behalf of" appellant Stephen Matthews. The trial court denied the motion and ordered Stephen to pay Melody's attorney's fees incurred defending against the motion. The DRO and Stephen jointly appeal the attorney's fees award.

In their primary issue, appellants argue Family Code section 231.211 precludes an award of attorney's fees in this case. Section 231.211 provides, in pertinent part:

> At the conclusion of a Title IV-D case, the court may assess attorney's fees and all court costs as authorized by law against the nonprevailing party, except that the court may not assess those amounts against the Title IV-D agency or a private attorney or political subdivision that has entered into a contract under this chapter or any party to whom the agency has provided services under this chapter. . . .

TEX. FAM. CODE ANN. § 231.211(a). Applying section 231.211 to this case, appellants argue: (1) this case is a Title IV-D case; (2) the Office of the Attorney General ("OAG") is a Title IV-D agency that delegated its Title IV-D authority to the DRO; and (3) Stephen is a "party to whom the [Title IV-D] agency has provided services." In response, Melody argues section 231.211 does not apply because this is not a Title IV-D case. I agree this is not a Title IV-D case.

The Family Code defines "Title IV-D case" as:

> an action in which services are provided by the Title IV-D agency under Part D, Title IV, of the federal Social Security Act (42 U.S.C. Section 651 et seq.), relating to the location of an absent parent, determination of parentage, or establishment, modification, or enforcement of a child support, medical support, or dental support obligation, including a suit for modification filed by the Title IV-D agency under Section 231.101(d) and any other action relating to the services that the Title IV-D agency is required or authorized to provide under Section 231.101.

*Id.* § 101.034. Section 231.101 lists the "Title IV-D Child Support Services" a Title IV-D agency may provide, which include: "(1) parent locator services; (2) paternity determination; (3) child support, medical support, and dental support establishment; (4) review and adjustment of child support orders; and (5) collection and distribution of child support payments." *Id.* § 231.101. Section 231.101(d) provides:

> The Title IV-D agency may review a support order at any time on a showing of a material and substantial change in circumstances, taking into consideration the best interests of the child. If the Title IV-D agency determines that the primary care and possession of the child has changed, the Title IV-D agency may file a petition for modification under Chapter 156.

*Id.*

The statute's plain language, therefore, defines "Title IV-D case" as including actions relating to: (1) location of an absent parent, (2) determination of parentage, and (3) establishment, modification, or enforcement of a child support, medical support, or dental support obligation. *See id.* § 101.034. While section 231.101(d) permits a Title IV-D agency to seek *modification* of possession and access in a case involving a child support order, the statute plainly does not permit a Title IV-D agency to intervene in a suit affecting the parent-child relationship solely to seek *enforcement* of an order for possession and access.[2] Here, it is undisputed the enforcement of a child support order was not an issue.

Appellants do not dispute that section 231.211's definition of "Title IV-D case" does not reference "possession and access." Rather, they argue we should read section 231.211 in conjunction with Family Code section 231.002 to conclude, as a matter of first impression, that

---

[2] The supreme court has held that because a "Title IV-D case" includes any "action" in which the OAG is providing services related to child support establishment, modification, or enforcement, and "action" is synonymous with "suit," a suit in which the OAG sought to modify *both* a child support obligation *and* conservatorship was a Title IV-D case. *Office of the A.G. of Tex. v. C.W.H.*, 531 S.W.3d 178, 183 (Tex. 2017) (interpreting prior version of section 101.034). Here, in contrast, because no party sought any relief related to child support and the DRO filed a motion to enforce an order for possession and access only, this is not a "Title IV-D case."

the power to file a motion to enforce possession and access is among the OAG's Title IV-D "powers and duties" that have been delegated to the DRO. I disagree. Nothing in section 231.002's list of a Title IV-D agency's "powers and duties" gives the agency the power to seek enforcement of an order for possession and access. Because the OAG's Title IV-D powers do not include this power, the OAG could not have delegated it to the DRO.[3] Accordingly, section 231.002 does not expand the definition of "Title IV-D case" to include this type of case.

Because the Family Code definition of "Title IV-D case" does not include a motion to solely enforce an order for possession and access, this is not a Title IV-D case. For this reason, I would overrule appellants' first issue and hold section 231.211 does not prohibit the fee award in this case.

**Discretionary Award of Fees Under Family Code Section 106.002**

In their second and third issues, appellants argue that to the extent the trial court had discretion to award attorney's fees pursuant to Family Code section 106.002, it abused that discretion because: (1) the trial court disregarded Family Code section 231.211; (2) the amount of the award is unreasonable; (3) the award is an improper sanction; (4) the trial court misapplied the "prevailing party" analysis; and (5) the evidence is legally and factually insufficient to support the fee award.

Although appellants did not raise the issue, the Opinion holds the trial court abused its discretion in awarding attorney's fees against Stephen because Stephen was not a party in the trial court. For the reasons that follow, I believe Stephen was a party in the trial court and the trial court did not abuse its discretion in awarding fees against him.

---

[3] Rather, the Family Code is the source of the DRO's power to "file a suit to . . . enforce a court order . . . for possession of and access to a child[.]" TEX. FAM. CODE ANN. § 203.004(a)(3)(B).

## A.      Stephen was a party in the trial court

Identifying itself as "Intervenor" in this suit affecting the parent-child relationship, the DRO filed a motion, later amended, for enforcement of an order for possession and access. The DRO alleged Melody failed and refused to comply with the possession order by failing to surrender to Stephen the couple's two teenaged children on thirty-five occasions when Stephen was entitled to visitation. Melody retained counsel and filed an answer raising the defenses of inability to comply and voluntary relinquishment by Stephen, as well as requesting sanctions and attorney's fees from both the DRO and Stephen.[4]

The trial court held a hearing over the course of two days. At the beginning of the hearing, the trial court asked counsel for the DRO whom she represented, and counsel responded: "I'm here on behalf of Stephen Matthews." Stephen also personally appeared and testified during the hearing. The trial court's final order denying the DRO's motion for enforcement states under the heading "Appearances" that "Intervenor, [the DRO]," Melody, *and "Petitioner, Stephen O. Matthews"* each appeared in person and announced ready for trial (emphasis added).

In light of these facts, I believe Stephen was a party in the trial court. The DRO identified itself in the trial court as an intervenor acting "on behalf of Stephen Matthews." But even if the DRO did not actually represent Stephen, Melody's responsive claims against Stephen were affirmative claims that brought him into the case. A defendant alleges a claim for affirmative relief if she states a cause of action, independent of the plaintiff's cause of action, on which she can recover compensation or relief even if the plaintiff abandons or fails to establish his claims. *Tex.*

---

[4] Specifically, the prayer of Melody's pleading requests "that the Court deny [the petition for enforcement], that the Court impose[ ] sanctions on [Stephen] and/or [the DRO] in accordance with Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Civil Practice and Remedies Code *and that [Melody] recover all attorney's fees, expenses, and costs incurred*" (emphasis added). A general request for fees in the prayer of a pleading, such as this one, is sufficient to authorize an award under Family Code section 106.002. *Tull v. Tull*, 159 S.W.3d 758, 762 (Tex. App.—Dallas 2005, no pet.).

*Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 38 (Tex. 2008); *In re C.A.S.*, 128 S.W.3d 681, 685–86 (Tex. App.—Dallas 2003, no pet.). For instance, "[a]n affirmative claim, stated in an answer, for recovery of attorney's fees for preparation and prosecution of a defense constitutes a counterclaim." *C.A.S.*, 128 S.W.3d at 686 (citation omitted). Here, Melody sought affirmative relief against both the DRO and Stephen, and Melody's attorney proved up the fee request without objection or cross-examination by either the DRO or Stephen.

Therefore, because I believe Stephen was party in the trial court, I will briefly address appellants' arguments regarding whether the trial court abused its discretion under Family Code section 106.002 in awarding fees against Stephen. For the reasons described below, I would hold the trial court did not abuse its discretion.

**B.       The trial court did not abuse its discretion in awarding attorney's fees to Melody**

As appellants acknowledge, in a suit affecting the parent-child relationship, the trial court has broad discretion to award attorney's fees pursuant to Family Code section 106.002. *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002); *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio 2015, no pet.). The trial court does not abuse its broad discretion unless it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *R.E.S.*, 482 S.W.3d at 586 (citing *Illif v. Illif*, 339 S.W.3d 74, 78 (Tex. 2011)). Section 106.002 "does not designate to which party fees may be awarded" and does not "limit the trial court's designation." *Id.*

Appellants first argue the trial court abused its discretion by "disregarding" Family Code section 231.211. Because I would hold section 231.211 does not preclude a fee award in this case for the reasons stated above, I would conclude the trial court did not abuse its discretion by disregarding that provision.

Appellants next argue the fee award, totaling $17,702, is unreasonable in light of Stephen's $54,000 annual salary. To determine a reasonable amount of attorney's fees in a suit affecting the

parent-child relationship, trial courts may consider the hours spent on the case, the nature and complexity of the case, the experience of the attorneys, and the prevailing hourly rates in the community. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *accord In re R.H.H.*, No. 04-09-00325-CV, 2010 WL 2842905, at *7 (Tex. App.—San Antonio 2010, no pet.) (mem. op.). A trial court is not required to consider the fee obligor's income. *See id.* Accordingly, assuming the trial court failed to consider Stephen's income in making the award of attorney's fees in this case, I would hold the trial court did not abuse its discretion.

Third, appellants argue that "[s]ince the DRO was the only one that signed the pleadings and there was a finding of no bad faith, the trial court abused its discretion when it awarded attorney's fees as a sanction." I disagree that the fee award was a sanction. The trial court did not characterize the award as a sanction in its ruling on the record, in its order on the motion for enforcement, or in its findings of fact and conclusions of law. Rather, the trial court stated on the record: "I know [Melody's counsel] has requested from the client attorney's fees for bad faith for filing. I don't find any bad faith[.] . . . I have to say [Melody] is the prevailing party, so based on that, I'm going to grant the attorney's fees requested in the amount of $17,702 as a judgment." Later, in its findings of fact and conclusions of law, the trial court offered additional, non-sanction bases for its ruling. Accordingly, I would hold the trial court did not award fees as an improper "sanction."

Fourth, relying on this court's opinion in *R.E.S.*, appellants argue the trial court lacked discretion to award fees to Melody as the "prevailing party." *R.E.S.* does not preclude an award of fees to the prevailing party. Rather, in upholding an award to the non-prevailing party, this court held section 106.002 neither mandates an award of fees to the prevailing party nor precludes an award to the non-prevailing party. 482 S.W.3d at 586–87. Noting that "[r]arely is either party a

clear-cut victor in a suit affecting the parent-child relationship," this court held "the prevailing-party determination is but one factor in a trial court's analysis of an attorney's-fee award." *Id.*; *see also Coburn v. Moreland*, 433 S.W.3d 809, 840 (Tex. App.—Austin 2014, no pet.) ("Even in cases applying a 'successful party' analysis, we discern no <u>*requirement*</u> that a party win on all or even most of the requested relief. The absence of a bright-line rule . . . in these cases is consistent with the broad discretion trial courts are afforded in awarding attorney's fees in SAPCR proceedings." (emphasis added)). While the trial court was not required to award Melody fees in this case, it was within the trial court's discretion to do so. *R.E.S.*, 482 S.W.3d at 586. Further, even if the trial court could not base its decision solely on a prevailing party analysis, the trial court articulated seven additional bases for the award in its findings of fact and conclusions of law. Therefore, I would hold the trial court did not abuse its discretion in awarding fees to Melody as the "prevailing party."

Next, appellants argue the evidence is insufficient to support the trial court's findings and conclusions that Stephen made false and implausible allegations in the motion for enforcement. Appellants argue that because the DRO, not Stephen, filed the motion for enforcement, the trial court erred in identifying the DRO as the "intervenor," rather than as the "petitioner." The DRO clearly identified itself as the "intervenor" in its pleadings in the trial court. Regardless, whether the DRO was an intervenor or the petitioner is immaterial for two reasons. First, the findings and conclusions appellants challenge specifically refer to Stephen's (as opposed to "intervenor's" or "petitioner's") actions.[5] Second, even if Stephen is not responsible for the written pleading,

---

[5] Those findings and conclusions are: "The Father and Intervenor withdrew alleged violations . . . pertaining to [daughter]"; "The Father alleged 5 violations . . . which were impossible because the Father could not drive from [son's] school to [daughter's] school in the 20 minutes as alleged"; and "The award of attorney's fees and expenses to [Melody] is based on: . . . The Father alleging five violations which were physically impossible for the Father to have arrived at the children's respective schools as alleged because Father testified that he could not drive the considerable distance between the schools to have arrived as alleged; . . . Father failed to exercise due diligence in reviewing the Father's allegations set forth in the 1st Amended Motion for Enforcement of Possession or Access by Contempt. This failure resulted in pleadings or allegations that claimed five impossible times for Father to have arrived at [daughter's] school, if Father drove to [son's] school as he testified."

Stephen made the same false and implausible allegations in his testimony at the hearing. Based on that testimony, I would hold there is sufficient evidence in the record to support the trial court's findings and conclusions that Stephen alleged violations of the possession and access order that could not have occurred as alleged.

Finally, appellants argue the trial court improperly characterized Stephen's testimony as "judicial admissions."[6] Whether the trial court fairly characterized Stephen's testimony as "judicial admissions" is not determinative of whether the fee award is improper. As noted above, the award of fees under section 106.002 is within the sound discretion of the trial court. *Id.* "Under an abuse of discretion standard, we will not reverse the trial court's judgment if the trial court reaches a correct result even for a wrong reason." *Diaz v. Diaz*, 350 S.W.3d 251, 256 (Tex. App.—San Antonio 2011, pet. denied) (citations omitted). For example, in *Diaz*, this court held the trial court's broad discretion to award fees under section 106.002(a) supported the trial court's order awarding one party an expert witness fee as a "cost," even though the fee should have been awarded as an "expense." *Id.* at 257. Here, even if Stephen's statements were not "judicial admissions," the record demonstrates the trial court accurately described Stephen's testimony. Further, appellants do not challenge all of the additional bases for the fee award listed in the trial court's findings of fact and conclusions of law, nor do they challenge the sufficiency of the evidence concerning the amount and necessity of the fees incurred. Therefore, I would hold that even if the trial court mischaracterized Stephen's testimony as "judicial admissions," the evidence is sufficient to support the trial court's award of fees under section 106.002.

---

[6] Specifically, the trial court found: "[Stephen] judicially admitted that: a) [Stephen] had no evidence that [Melody] failed to surrender the children to [Stephen] as alleged; b) [Melody] did not actively or overtly interfere with [Stephen's] visitation; c) [Stephen] authorized [son] to decide whether to have visitation with [Stephen]; d) [Stephen] elected not to compel [daughter] to leave her After School Program for visitation with [Stephen]; and e) [daughter] was available for pick up by [Stephen] at her school at the time her school was dismissed."

For all of these reasons, I would hold the trial court did not abuse its discretion in awarding fees against Stephen and overrule appellants' second and third issues.

## Conclusion

Because I would overrule each of appellants' issues, I would affirm the trial court's order. I join the Opinion's conclusion that this court has jurisdiction to consider this appeal as presented, as well as the Opinion's decision to deny Melody's motion for appellate sanctions.

Sandee Bryan Marion, Chief Justice